Brett D. LEAVEY, Plaintiff–Appellant,

v.

UNUM PROVIDENT CORPORATION;
Provident Life And Accident Insurance Company, Defendants–Appellees.

Brett D. Leavey, Plaintiff–Appellee,

v.

Unum Provident Corporation; Provident Life and Accident Insurance Company, Defendants–Appellants.

Nos. 06–16285, 06–16350.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 2008.

Filed Oct. 6, 2008.

Danielle D. Janitch, Thomas L. Hudson, Osborn Maledon, PA, Anita Rosenthal, Steven C. Dawson, Dawson & Rosenthal, PC, Gregg H. Temple, Gregg H. Temple, PC, Phoenix, AZ, for Plaintiff–Appellant.

Ann–Martha Andrews, Stephen M. Bressler, Lewis & Roca, LLP, Scott M. Bennett, Cheifetz & Iannitelli PC, Phoenix, AZ, Carl J. Summers, Evan M. Tager, Mayer Brown, LLP, Washington, DC, for Defendants–Appellees.

Before: B. FLETCHER and RYMER,

Circuit Judges, and DUFFY *, District Judge.

## MEMORANDUM **

Plaintiff Leavey ("Leavey") appeals the district court's reduction of the jury's punitive damages award because it was constitutionally excessive. Defendants Unum Provident Corporation and Provident Life and Accident Insurance Company (collectively "Unum") cross-appeal, challenging the district court's failure to give a proposed jury instruction, the compensatory damages award, the denial of their motions for judgment as a matter of law and for a new trial, and the punitive damages award. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

■ (1) The district court did not abuse its discretion in declining to instruct the jury that under Arizona law the parties had a reciprocal duty of good faith. The district court's instruction that "[t]here is an implied duty of good faith and fair dealing in every insurance policy," coupled with Unum's own argument to the jury, allowed the jury to determine intelligently whether Leavey's alleged breach of his own duty of good faith rendered Unum's conduct more reasonable. See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 726 F.2d 1381, 1398 (9th Cir. 1984). This court's decision in White v. Ford Motor Company, 500 F.3d 963 (9th Cir.2007), is not to the contrary. In White, the court held that, in light of Nevada law's requirement that a jury determining a punitive damages award consider the reprehensibility of the plaintiff's conduct, the district court should have instructed a jury that was empaneled solely to determine punitive damages that a prior jury had found the plaintiff 40 percent responsible for the tort at issue. Id. at 975. However, not only has Unum failed to identify a similar requirement under Arizona law, but the jury here, because it also determined Unum's liability, could decide for itself—based on the given instruction and Unum's argument to the jury— whether Unum was less liable because Leavey had breached his own duty of good faith.

■ (2) The district court did not abuse its discretion in reducing the jury's $4 million compensatory damages award for non-economic damages to only $1.2 million and no further. There was evidence that during the six months following Leavey's receipt of Unum's letter announcing the closing of his claim, Leavey "felt a great deal of anxiety," was "devastated," "confused" and depressed, felt compelled to move into a cheaper apartment, and was subjected to "real discouraging" and "degrading" experiences trying to find and keep a job. In addition, Leavey testified that even after he was informed that his benefits would be continued he "still had [his] concerns" because he expected his benefits to be terminated again. We conclude that the $1 million award for Leavey's emotional distress, while generous, is supported by evidence in the record and does not "shock the conscience" of the court. See Higgins v. Assmann Electronics, Inc., 217 Ariz. 289, 173 P.3d 453, 459 (2007); see also Monaco v. HealthPartners of S. Ariz., 196 Ariz. 299, 995 P.2d 735, 742 (1999) (holding that trial court did not err in denying remittitur of $1.5 million verdict and deferring to trial court's ruling "because its ruling is nearly always ... more

* The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

soundly based than ours can be" (internal quotation marks and citation omitted)).

■ The $200,000 award for Leavey's hand injury and relapse also is supported by the record and does not shock our conscience. *See Higgins,* 173 P.3d at 459. Regardless of how Leavey got the idea of injuring his own hand in order to obtain prescription drugs, a jury could have found that the anxiety and distress caused by Unum's letter drove Leavey to act on his idea and to relapse. Unum's argument that the causal connection between Unum's letter and Leavey's hand injury and relapse is too attenuated is without merit.

■ (3) The district court did not err in denying Unum's renewed motion for judgment as a matter of law pursuant to Fed. R.Civ.P. 50(b) and did not abuse its discretion in denying Unum's motion for a new trial pursuant to Fed.R.Civ.P. 59. Viewing the evidence in the light most favorable to Leavey, as we must, *see White v. Ford Motor Co.,* 312 F.3d 998, 1010 (9th Cir. 2002), *amended by* 335 F.3d 833 (9th Cir. 2003), we conclude that the jury could have found that Unum acted not only in bad faith but also with an "evil mind." *Gurule v. Illinois Mut. Life & Cas. Co.,* 152 Ariz. 600, 734 P.2d 85, 86 (1987). There was evidence that Unum knew, in early 2001, that Leavey could not perform the duties of his occupation and that he was receiving appropriate care; that Unum nonetheless subjected Leavey's claim to a roundtable review, the sole purpose of which was to close expensive claims; that Unum sought to influence the opinions of independent medical examiners; that Unum misrepresented the opinions of those independent medical examiners in its letter to Leavey announcing the closing of his claim; and that Unum knew that Leavey was a vulnerable individual who suffered from anxiety and depression, was recovering from a serious drug addiction, and was at a high risk of relapse. Based on that evidence, the jury could have found that Unum acted with an evil mind because it "acted to serve [its] own interest, having reason to know and consciously disregarding a substantial risk that [its] conduct might significantly injure the rights of others." *Bradshaw v. State Farm Mut. Auto. Ins. Co.,* 157 Ariz. 411, 758 P.2d 1313, 1324 (1988). Accordingly, a jury could have found by clear and convincing evidence that Unum was liable for punitive damages. *See Walter v. Simmons,* 169 Ariz. 229, 818 P.2d 214, 225 (1991); *see also Merrick v. Paul Revere Life Ins. Co.,* 500 F.3d 1007, 1013–14 (9th Cir.2007) (affirming denial of new trial motion because jury could have found, based on similar evidence of improper claim-closing practices, that insurance companies' conduct constituted "fraud and malice" under Nevada law and thus warranted punitive damages).

■ (4) The district court did not err in reducing the jury's $15 million punitive damages award to $3 million. Applying the guideposts set forth in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the court correctly concluded that the $15 million punitive damages award was constitutionally excessive: the compensatory award was substantial and constituted complete compensation, *see State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 426, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); the emotional harm "arose from a transaction in the economic realm, not from some physical assault or trauma [and] there were no physical injuries," *id.;* Leavey presented "scant evidence of repeated misconduct of the sort that injured [him]," *id.* at 423, 123 S.Ct. 1513; *cf. Philip Morris USA v. Williams,* 549 U.S., 346, 127 S.Ct. 1057, 1064, 166 L.Ed.2d 940 (2007) ("Evidence of actual harm to nonparties can help to show that the conduct

that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible." (emphasis added)); the ratio of the jury's punitive damages award to the reduced compensatory damages award was 7.5:1, *see State Farm*, 538 U.S. at 425, 123 S.Ct. 1513 (noting that "when compensatory damages are substantial" only a punitive award "equal to compensatory damages" may be acceptable); and there was a large disparity between the punitive damages award and the civil penalties authorized or imposed in comparable cases.

■ At the same time, the reduced punitive damages award—with a ratio of 1.5:1—was not constitutionally excessive. The Supreme Court has "decline[d] ... to impose a bright—line ratio which a punitive damages award cannot exceed," *id.; see Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1014 (9th Cir.2004) ("*State Farm's* 1:1 compensatory to punitive damages ratio is not binding, no mat-

ter how factually similar the cases may be."), and the ratio here fits within the "rough framework" for punitive damages discerned in *Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activists*, 422 F.3d 949, 962 (9th Cir.2005).[1]

Assuming, as Leavey contends, that the district court could reduce the jury's punitive damages award only to "the constitutional maximum," *see Leatherman Tool Group, Inc. v. Cooper Industries, Inc.*, 285 F.3d 1146, 1151 (9th Cir.2002), we conclude that the court arrived at the constitutional maximum when it determined the amount of punitive damages.

**AFFIRMED.**

1. While the Supreme Court's recent decision in *Exxon Shipping Co. v. Baker*, 554 U.S., ——, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008), "review[ed] a jury award for conformity with maritime law, rather than the outer limit allowed by due process," *Id.* at 2626, the Court's statements in that case support the district court's decision to reduce the award here. The majority opinion in *Exxon* notes that "[a]lthough 'we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula,' we have determined that 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.' " *Id.* at 2626 (quoting *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 582, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)). The district court's reduction—from a 7.5:1 ratio to a 1.5:1 ratio—is consistent with the constitutional framework as described in *Exxon*.